**SOUTH JERSEY LEGAL SERVICES, INC.**
415 W. Landis Avenue, Second Floor
Vineland, NJ  08360
Tel:  (856)691-0494 ext. 6330, ext. 6429
Fax: (856)691-5072
By:   Kenneth M. Goldman, Esquire
      Email: kgoldman@lsnj.org
 By:  Jennifer R. Pérez, Esquire
      Email: jperez@lsnj.org
By:   Olga D. Pomar, Esquire
      Email: opomar@lsnj.org
*Attorneys for Plaintiffs Marco Antonio Hernandez Perez*
*and Juan Guillermo Hernandez Perez*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MARCO ANTONIO HERNANDEZ PEREZ** and **JUAN GUILLERMO HERNANDEZ PEREZ,** | HON. _____, U.S.D.J. |
| *Plaintiffs,* | Civil Action No.: _____ |
| *vs.* | **COMPLAINT** |
| **HUERTA FARMS, MARIO HUERTA, CATALANO FARMS,  INC.,** and **MICHAEL CATALANO,** | |
| *Defendants.* | |

**PRELIMINARY STATEMENT**

1.     Plaintiffs Marco Antonio Hernandez Perez and Juan Guillermo Hernandez Perez

("the Hernandez Perez brothers"), are guest workers from Mexico who were employed as seasonal

farmworkers by Defendants Huerta Farms and Mario Huerta during the spring and summer of 2017

under the H-2A program, 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c)(1) and implementing

regulations at 20 C.F.R. § 655.100 et seq.

2.     During the course of the brothers' employment, Defendants Huerta Farms and Mario Huerta engaged in numerous unlawful and exploitive business practices that violated the Hernandez Perez brothers' rights under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 ("TVPRA"); the New Jersey Human Trafficking Prevention, Protection, and Treatment Act, N.J.S.A. 2C:13-8, et seq.; their employment contract and the H-2A program requirements under 20 C.F.R. § 655.100 et seq.; and the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), including but not limited to: 1) unlawfully confiscating and holding their passports and H-2A work visas, so as to keep them effectively detained at the place of employment and forced to perform labor for Defendants; 2) charging them unauthorized hiring fees in the amount of $2,000 each and making improper deductions from their pay; 3) reducing their hourly wage below the adverse effective wage rate of $12.19 in violation of the applicable H-2A regulations and in breach of their employment contract, and depriving them of earnings due to them; 4) ordering them to perform work at another farm—Defendant Catalano Farms, Inc.,—in breach of their employment contract and in violation of H-2A regulations; and 5) failing to reimburse pre-employment travel-related expenses incurred primarily for the benefit and convenience of the Defendants, thereby reducing their wages below minimum wage in violation of the FLSA.

3.     Defendants Huerta Farms and Mario Huerta further breached the employment contract between the parties by terminating the Hernandez Perez brothers' employment without cause in July 2017, prior to the expiration of the contract term. Further, Defendants Huerta Farms and Mario Huerta refused to allow the Hernandez Perez brothers to collect their personal property after improperly terminating their employment, which included their birth certificates, cell phones, and personal effects.

4.    Defendants Huerta Farms' and Mario Huerta's actions also constituted fraud, breach of the implied covenant of good faith and fair dealing, and conversion under New Jersey common law.

5.    Defendants Catalano Farms, Inc. and Michael Catalano—acting as joint employers with Defendants Huerta Farms and Mario Huerta for agricultural work the Hernandez Perez brothers performed at Catalano Farms—also are liable to the Hernandez Perez brothers for breach of contract for paying them less than the adverse effective wage rate of $12.19 in violation H-2A regulations and in breach of their employment contract.

6.    The Hernandez Perez brothers file this action to vindicate their rights and seek equitable relief, damages, fees and costs.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 as it involves a federal question in that this action arises under the laws of the United States.

8.    This Court has jurisdiction of the TVPRA claim pursuant to 18 U.S.C. § 1595(a).

9.    This Court has jurisdiction of the FLSA claim pursuant to 29 U.S.C. § 216(b).

10.   This Court has supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367 as they are related to the federal claims as part of the same case or controversy.

11.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Hernandez Perez brothers' claims arose within this judicial district.

## PARTIES

12.   Plaintiff Marco Antonio Hernandez Perez is a migrant farmworker and a citizen of Chiapas, Mexico. At all times relevant to this Complaint, he was lawfully admitted to the United

States on a temporary work visa pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a), commonly referred to as the "H-2A Program." At all times relevant to this Complaint, he resided at 1423 Kings Highway, Woodstown, New Jersey 08098.

13.     Plaintiff Juan Guillermo Hernandez Perez is a migrant farmworker and a citizen of Chiapas, Mexico. At all times relevant to this Complaint, he was lawfully admitted to the United States on a temporary work visa pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a), the H-2A Program. At all times relevant to this Complaint, he resided at 1423 Kings Highway, Woodstown, New Jersey 08098.

14.     Defendant Huerta Farms is sole proprietorship owned and operated by Defendant Mario Huerta. Defendant Huerta Farms is a farming business growing agricultural goods for sale in interstate commerce. At all times relevant to this Complaint, Huerta Farms was located and was doing business at 440 Auburn Road, Woodstown, NJ 08098, with its principle business address at 1423 Kings Highway, Woodstown, NJ 08098.  Upon information and belief in May 2018, Defendant Huerta Farms began conducting business at 1557 County Road 29, Lake Placid, FL 33852.

15.     Defendant Mario Huerta is the owner of Defendant Huerta Farms.  At all times relevant to this action, Defendant Mario Huerta was residing at 175 Penns Grove – Auburn Road, Apt. #1009, Carney's Point, NJ 08069. Defendant Mario Huerta currently has a place of business at Huerta Farms presently located at 1557 County Road 29, Lake Placid, FL 33852. At all times relevant to this action, Defendant Mario Huerta owned and operated Defendant Huerta Farms as a sole proprietorship while it was located and conducting business in Woodstown, New Jersey.

16.     Defendant Catalano Farms, Inc. is a New Jersey for profit corporation with a business address of  118  Pointers Auburn Road, Salem, NJ 08079 .  At all times relevant to this

Complaint, Catalano Farms was located and was doing business at 118 Pointers Auburn Road, Salem, NJ 08079. Defendant Catalano Farms, Inc. is a farming business growing agricultural goods for sale in interstate commerce.

17. Defendant Michael Catalano is the President of Defendant Catalano Farms, Inc. At all times relevant to this Complaint, Defendant Michael Catalano personally operated, authorized, participated and directed the business activities of Defendant Catalano Farms. Defendant Michael Catalano is sued herein in his corporate and personal capacities.

## FACTUAL ALLEGATIONS

### A. The H-2A guest worker program

18. The H-2A Temporary Visa Program ("H-2A Program") was established by Congress under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(ii)(a), and is implemented pursuant to regulations found at 20 C.F.R. § 655.100 et seq.. An agricultural employer in the United States may import H-2A workers if the "U.S. DOL certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed." 8 U.S.C. § 1101(a) (15) (H)(ii)(a); 8 U.S.C. § 1188(a)(1). Foreign workers admitted in this fashion are commonly referred to as "H-2A workers."

19. Agricultural employers seeking the admission of H-2A workers must first file a temporary employment certification application with the U.S. DOL. 20 C.F.R. § 655.130. This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations, which is used in the recruitment of both U.S. and H-2A workers. 20 C.F.R. § 655.121(a)–(c). The H-2A regulations establish the minimum benefits, wages,

and working conditions that must be offered in order to avoid adversely affecting U.S. workers. 20 C.F.R. §§ 655.0(a)(2), 655.122, 655.135.

20.    The H-2A regulations at 20 C.F.R. § 655.122 set forth specific required contents of H-2A employers' job offers, including:

     a.    20 C.F.R. § 655.122(l), which requires agricultural employers to pay hourly H-2A workers  the highest of the  adverse effect wage rate ("AEWR"), or the federal or state minimum wage. See also 20 C.F.R . § 655.120. At all times relevant to this action, the AEWR was $12.19.

     b.    20 C.F.R. § 655.122(i), which guarantees a minimum amount of work or wages for three-fourths of the period running from the first workday to the end date specified in the clearance order, commonly referred to as the "three-fourths guarantee.".

     c.    20 C.F.R. § 655.122(g), which requires agricultural employers to provide H-2A workers "either with three meals a day or else must furnish free and convenient cooking and kitchen facilities to the workers that will enable the workers to prepare their own meals."

     d.    20 C.F.R. § 655.122(p), which allows agricultural employers to take deductions from the pay of H-2A only as allowed by law and must not constitute "a profit to the employer or to any affiliated person" or be "primarily for the benefit or convenience of the employer."

     e.    20 C.F.R. § 655.122(h)(1), which requires agricultural employers to reimburse  H-2A workers for reasonable transportation and subsistence costs incurred during travel from the place where workers had originally come from to the work site after workers complete 50% of the contract work period.

6

    f.   20 C.F.R. § 655.122(h)(2), which requires agricultural employers to reimburse H-2A workers for reasonable transportation and subsistence costs back from the place where they had departed after completion of the contract period or if the worker "is terminated without cause."

    g.   20 C.F.R. § 655.122(n), which excuses agricultural employers from the "three-fourths guarantee" under 20 C.F.R. § 655.122(i) and payment of return travel costs under 20 C.F.R. § 655.122(h)(2) only if an H-2A worker "voluntarily abandons employment before the end of the contract period, or is terminated for cause" and the employer notifies the Department of Homeland Security "not later than two working days after such abandonment occurs. . ."

    h.   20 C.F.R. § 655.122(j), which requires agricultural employers to "keep accurate and adequate records with respect to the workers' earnings, including but not limited to field tally records, supporting summary payroll records, and records showing the nature and amount of the work performed; the number of hours of work offered each day by the employer. . .; the hours actually worked each day by the worker; the time the worker began and ended each workday; the rate of pay. . . ; the worker's earnings per pay period; the worker's home address; and the amount of and reasons for any and all deductions taken from the worker's wages."

    i.   20 C.F.R. § 655.122(k), which requires agricultural employers to provide H-2A workers with accurate hours and earnings statements.

    21.   Further, pursuant to 20 CFR § 655.135 entitled "Assurances and obligations of H–2A employers," an employer seeking to employ H–2A workers "must agree as part of the

Application for Temporary Employment Certification and job offer that it will abide by the requirements of this subpart and make each of the following additional assurances:…"

    a.   Pursuant to 20 CFR § 655.135(e), H-2A employers must "comply with all applicable Federal, State and local laws and regulations, including health and safety law. In compliance with such laws, including the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub.L. 110–457, 18 U.S.C. 1592(a), refrain from holding or confiscating workers' passports, visas, or other immigration documents.

    b.   Pursuant to 20 C.F.R. § 655.135(f), H-2A employers must provide a full-time temporary position, calculated to be at least 35 hours per work week.

    c.   Pursuant to 20 C.F.R. § 655.135(j), H-2A employers are prohibited against receiving from H-2A workers "payment of any kind. . . for any activity related to obtaining H–2A labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs. For purposes of this paragraph, payment includes, but is not limited to, monetary payments, wage concessions (including deductions from wages, salary, or benefits), kickbacks, bribes, tributes, in kind payments, and free labor."

22.    In addition, pursuant to 8 C.F.R. § 214.2(h)(1)(i), an agricultural employer petitioning for H-2A workers is prohibited from having any H-2A worker perform any work for any other employer.

**B.  <u>Huerta Farms application for and issuance of Clearance Order under H-2A program</u>**

23.    In the spring of 2017, Defendants Huerta Farms and Mario Huerta sought to import temporary foreign workers for agricultural work under the H-2A Temporary Visa Program to be

employed by Huerta Farms, in order to plant, cultivate and harvest tomatoes, peppers, squash and cucumbers.

24.     As required under USDOL regulations, 20 C.F.R. § 655.101(a)(1), Defendants Huerta Farms and Mario Huerta applied for a temporary alien labor certification with the USDOL Regional administrator on or about February 13, 2017.  The application, contained in USDOL Agricultural and Food Processing Clearance Order  ETA Form 790 ("Clearance Order"),  included a job offer that could be circulated both interstate and intrastate to recruit both United States citizens and alien H-2A workers.

25.     In the H-2A Clearance Order application, Defendants Huerta Farms and Mario Huerta stated as items # 2 and #3 that the worksite was at Huerta Farms, 440 Auburn Road, Woodstown, NJ 08098, and that the worksite and housing at the site was owned and operated by Defendants Huerta Farms and Mario Huerta.

26.     Defendants Huerta Farms and Mario Huerta further stated as item # 9 in the H-2A Clearance Order application that the anticipated employment period was from May 1 to November 30, 2017.

27.     Defendants Huerta Farms and Mario Huerta further stated as item #11  in the H-2A Clearance Order application that the anticipated hours of work per week were 8 hours a day, Monday through Friday.

28.     Defendants Huerta Farms and Mario Huerta further stated as item #14 in the H-2A Clearance Order application that the employer would furnish free and convenient cooking and kitchen facilities so that workers could prepare their own meal, and would provide regular transportation to assure workers access to stores where they can purchase groceries.

29.     Defendants Huerta Farms and Mario Huerta further stated as item #17 in the H-2A Clearance Order application that the hourly wage would be $12.19, and that the employer guarantees to offer employment for a minimum of ¾ of the workday of the total specified period during which the work contract and all extensions are in effect, beginning with the first day after the worker arrived at the worksite and ending on the expiration date specified in the work contract or extension. Defendant Mario Huerta expressly stated that he would not deduct for meals.

30.     Defendants Huerta Farms and Mario Huerta further stated as item #19 in the H-2A Clearance Order application that the employer would provide advance transportation, or reimburse the workers for transportation costs and subsistence to the work site when the worker completed 50% of the work period.

31.     Defendants Huerta Farms and Mario Huerta certified in item #27 of the H-2A Clearance Order application that the job order described the actual terms and conditions of the employment being offered and contained all the material terms and conditions of the job. Pursuant to USDOL regulations, 20 C.F.R. § 655.122, in the absence of a separate, written work contract between Defendant Huerta Farms and the Hernandez Perez brothers, the job order and the certified Application for Temporary Employment Certification is the employment contract.

32.     Defendants Huerta Farms and Mario Huerta provided "assurances" in the H-2A Clearance Order application pursuant to 20 C.F.R. § 655.135 as follows:

      a.   That he will provide to workers referred through the clearance system the number of hours per week cited in item #11 of the clearance order for the week beginning with the anticipated date of need, unless the employer has amended the date of need at least 10 working days prior to the original date of need by so notifying the Order-Holding Office (OHO), and that if the employer fails to notify the OHO, the

employer shall pay eligible workers referred through the intrastate/interstate clearance system the specified hourly rate or pay for the first week starting with the original anticipated date of need;

b. That all working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration, and other employment-related laws;

c. That the employer assures the availability of no cost or public housing which meets applicable Federal and State standards and which is sufficient to house the specified number of workers requested;

d. That the employer agrees to abide by the regulations at 24 C.F.R. 653.501, 24 C.F.R. 653.135, and 20 C.F.R. 653.107;

e. That the employer may terminate the worker with notification to the Employment Service if the worker "refuses work without justified cause to perform work for which the worker was recruited and hired" or commits "serious acts of misconduct."

f. That a copy of the agricultural work agreement contract or the ETA 790 clearance order and attachments will be provided to the worker by the employer no later than on the day work commences;

33.    Defendants Huerta Farms and Mario Huerta did not mention or reference any advance hiring fees to be charged to workers in the H-2A application.

34.    Defendants Huerta Farms and Mario Huerta attached "Work Rules" to the H-2A application which stated, *inter alia*, that:

a. Violation of lawful job-related employer requirements will be considered grounds for termination;

11

    b.   Penalties such as suspension from work opportunity for the remainder of the day, or for up to 3 days, may be made in the case of less serious violations;

    c.   Workers who do not perform work as per supervisor's instructions may be suspended without pay for the remainder of the work day or for up to 5 days at one time, depending on the degree and seriousness of the infraction, with the worker's prior record and other relevant factors to be considered before any disciplinary action is taken.

35.    The USDOL approved and issued Defendants Huerta Farms' and Mario Huerta's clearance order on February 17, 2017 ("Clearance Order"), attached as Exhibit A.

**C.**  **Recruitment and hiring of the Hernandez Perez brothers.**

36.    In 2016, the Hernandez Perez brothers learned through family members residing in New Jersey about the possibility of working at Huerta Farms in Woodstown, New Jersey, under the H-2A Program.  The Hernandez Perez brothers were interested in obtaining employment because it was their understanding that they could earn over $12,000 working in the United States for six months as H-2A seasonal guest workers, while in Mexico their expected earnings for similar work would be only approximately $2,000.  They had never worked through the H-2A Program or travelled to the United States prior to that time.

37.    In early 2017, the Hernandez Perez brothers spoke by telephone with Defendant Mario Huerta, who explained to them how to apply for the H-2A visas with the U.S. State Department Consulate in Mexico. Defendant Mario Huerta told them that their employment at Huerta Farms would start in May 2017 and continue through November 2017.

38.    Defendant Mario Huerta also stated that the Hernandez Perez brothers would have to each pay him $2,000 as a condition of being hired to work at Huerta Farms.

39.     The Hernandez Perez brothers agreed to pay the $2,000 because they believed it was necessary in order to obtain employment. They did not knowingly or intentionally waive their rights to object to this payment.

40.     Because the Hernandez Perez brothers did not have the funds to make the payment, they asked that it be taken out of their pay. Defendant Mario Huerta agreed to the payment arrangement but required a deposit of $500 each.

41.     The Hernandez Perez brothers' sister, who was in New Jersey, paid $500 to Defendant Mario Huerta on behalf of each brother as an initial payment toward the $2,000 balance. The Hernandez Perez brothers promised to pay their sister for this loan when they commenced working at Huerta Farms.

42.     In or about May 2017, the Hernandez Perez brothers again spoke with Defendant Mario Huerta about the process for obtaining the H-2A visas. Defendant Mario Huerta provided them with contact information for his attorney, Omar Santos, and instructed the Hernandez Perez brothers to meet the attorney in Monterrey, Mexico, where the U.S. State Department Consulate was located.

43.     On or about May 21, 2017, the Hernandez Perez brothers traveled by bus from Chiapas to Monterrey, were they stayed in a hotel until on or about May 26, 2017.

44.     While in Monterrey, the Hernandez Perez brothers met with Defendant Mario Huerta's attorney who reviewed with them their employment contract and provided information regarding the H-2A visa application process. To the best of their recollection, the terms of the employment explained to them were those specified in the Huerta Farms Clearance Order.

45.      On or about May 24, 2017, the Hernandez Perez brothers went to the U.S. State Department Consulate where they were fingerprinted and told to return in two days.

13

46.     On or about May 26, 2017, the Hernandez Perez brothers returned to the Consulate where they were interviewed. Later that day, they were informed them that the U.S. State Department had approved their H-2A visa applications and they returned to the Consulate and received their passports and H-2A visas.

47.     On or about May 26, 2017, the Hernandez Perez brothers, together with other workers recruited and hired by Defendant Mario Huerta to work at Defendant Huerta Farms, travelled by bus to Nuevo Laredo, Texas.

48.     The Hernandez Perez brothers paid for their own transportation costs from their homes to Nuevo Laredo, Texas. Those costs included bus fare of $271.00 per person, 2-night hotel stay with a total cost of $200.00, and meal expenses of $97.00 per person, totaling $468.00 each. These travel costs directly related to their employment at Huerta Farms and were incurred primarily for the benefit of Defendants Huerta Farms and Mario Huerta. The Hernandez Perez brothers expected to eventually be reimbursed for these expenses as provided in the Clearance Order.

49.     Defendant Mario Huerta met the workers, including the Hernandez Perez brothers, in Nueva Laredo, Texas, and transported them in a vehicle to Huerta Farms in Woodstown, New Jersey.

50.     The Hernandez Perez brothers arrived at Huerta Farms on or about May 28, 2017. Upon arrival at Huerta Farms, Defendant Mario Huerta took the Hernandez Perez brothers aside and ordered them not to mention to the other workers that Defendant Mario Huerta had charged them $2,000 to work for him. Defendant Mario Huerta never asked the Hernandez Perez brothers about their travel expenses and never offered to reimburse them.

D. **Employment of Hernandez Perez brothers at Huerta Farms**

14

**(Hernandez Perez brothers' performance of job duties)**

51.     The Hernandez Perez brothers' employment agreement with Defendants Huerta Farms and Mario Huerta, as agreed to by the parties prior to the commencement of employment, consisted of the terms of employment specified in the Clearance Order.

52.     The Hernandez Perez brothers began working on or about May 29, 2017, the day after their arrival.  The work included planting and harvesting various crops such as tomatoes, pumpkins, peppers, squash and chilies.

53.     The Hernandez Perez brothers performed all the required duties under the employment agreement until Defendants Huerta Farms and Mario Huerta, terminated their employment without cause.

54.     At all times relevant to this action, Defendants Huerta Farms and Mario Huerta employed the Hernandez Perez brothers for the harvesting and cultivating of tomatoes and other agricultural goods for sale in interstate commerce.

**(Defendants Huerta Farms and Mario Huerta confiscation of passport and visas; unlawful detention at Huerta Farms)**

55.     Approximately three days after the Hernandez Perez brothers arrived at Huerta Farms, Defendant Mario Huerta demanded that the Hernandez Perez brothers to give him their passports and H-2A work visas, stating that he needed the documents to verify some documentation and that he would return them in two or three days.

56.     When the Hernandez Perez brothers inquired about the documents a few days later,  Defendant Mario Huerta responded that he still needed them and would return them at a later date.

57.     Defendant Mario Huerta did not ever return the documents to the Hernandez Perez brothers.

58.     The Hernandez Perez brothers did not request the documents again because they learned that Defendant Mario Huerta had confiscated the documents of all of the H-2A workers and that it was his regular business practice. The Hernandez Perez brothers felt intimidated and worried that Defendant Mario Huerta would become angry if they attempted to insist on getting their documents returned to them.

59.     Without possession of their documents, the Hernandez Perez brothers were afraid to leave Huerta Farms.  They had never been in the United States prior to this time and were in an unfamiliar environment, did not speak English, and therefore knew it would be easy to identify them as foreigners. They were very fearful that they would be arrested and deported as they could not prove their legal status as H-2A guest workers.

60.     The Hernandez Perez brothers also saw that Defendant Mario Huerta could easily get impatient and angry with the workers. They were afraid that if they annoyed or angered Defendant Mario Huerta, he could call law enforcement authorities and, because they would not be able to prove their legal immigration status, he could have them arrested.

61.     Defendants Huerta Farms and Mario Huerta purposefully and intentionally confiscated the H-2A workers' passports and visas so that the workers would feel intimidated, coerced to work under whatever terms and conditions the Defendants imposed, and not be able to freely leave Huerta Farms or assert their legal rights under their employment contracts.

**(Defendants' failure to pay agreed-on amount of wages)**

62.     According to the Clearance Order Defendants Huerta Farms and Mario Huerta were required to pay the H-2A workers—including the Hernandez Perez brothers—$12.19 per hour.

63.     During the entire time that the Hernandez Perez brothers worked at Huerta Farms, Defendants Huerta Farms and Mario Huerta never paid them $12.19 per hour for the work they performed.

64.      Each week when Defendants Huerta Farms and Mario Huerta paid the Hernandez Perez brothers, Defendants required the Hernandez Perez brothers to come to Defendant Mario Huerta's office to receive their paychecks.

65.      Each week Defendant Mario Huerta presented to the Hernandez Perez brothers paychecks showing earnings at the rate of $12.19 per hour.

66.      The paychecks often did not reflect the actual number of hours the Hernandez Perez brothers had worked.

67.     Upon information and belief, Defendants Huerta Farms and Mario Huerta failed to maintain and to provide to the Hernandez Perez brothers accurate and adequate records with respect to their earnings.

68.     Defendant Mario Huerta then instructed the Hernandez Perez brothers to sign each of their paychecks and return the paychecks to him so that he could cash the checks for them. Defendants Huerta Farms and Mario Huerta would then further shortchange the Hernandez Perez brothers by returning to them cash at the rate of only $9.00 per hour rather than $12.19 per hour.

17

69.     Defendant Mario Huerta told the Hernandez Perez brothers that he was paying them only $9.00 per hour because he could not afford to pay the full contract rate of $12.19 per hour.

70.     Defendants Huerta Farms and Mario Huerta never gave back the Hernandez Perez brothers cash for the full amount owed for the work they had performed.

71.     Upon information and belief, Defendants Huerta Farms and Mario Huerta underpaid the other H-2A seasonal guest workers in the same manner.

**(Improper deductions from wages for unlawful $2,000 hiring fee)**

72.     Approximately two weeks after the Hernandez Perez brothers started working at Huerta Farms, Defendant Mario Huerta asked them for repayment of the $1,500 balance of the $2,000 improper hiring fee.  Starting with the third week of employment, Defendants Huerta Farms and Mario Huerta began deducting an additional $100 from the Hernandez Perez brothers' wages to pay toward that balance.

73.     The Hernandez Perez brothers each paid approximately $400 over the course of the next four weeks to Defendants Huerta Farms and Mario Huerta through these deductions from their pay.

**(Work at Catalano Farms contrary to provisions of H-2A Clearance Order)**

74.     Defendants Huerta Farms and Mario Huerta ordered the Hernandez Perez brothers and other H-2A guest workers on numerous occasions to perform similar agricultural work on a nearby farm, known as Catalano Farms and owned by Defendant Catalano Farms, Inc., and operated by Defendant Michael Catalano.

75.     Catalano Farms was not listed on Defendant Huerta Farms' H-2A Clearance Order as an approved work site.

18

76.    Upon information and belief, during all times relevant to this action, Defendants Huerta Farms and Mario Huerta had a business arrangement with Defendants Catalano Farms, Inc. and Michael Catalano, the terms of which are not known by the Hernandez Perez brothers.

77.    The location of Huerta Farms, where the Hernandez Perez brothers lived and worked, has been owned by members of the Catalano family, Salvatore and Anna Catalano, since 1992. Another member of the Catalano family, Martin Catalano, had previously operated the same site where Huerta Farms had been located as a farming business.

78.    Upon information and belief, the business arrangement provided that H-2A guest workers employed by Defendants Huerta Farms and Mario Huerta would perform agricultural work at Catalano Farms for the benefit of Defendants Catalano Farms, Inc. and Michael Catalano.

79.    Upon information and belief, Defendants Catalano Farms, Inc. and Michael Catalano knew or should have known that the farmworkers employed by Defendants Huerta Farms and Mario Huerta were H-2A guest workers covered by the protections and provisions of 8 U.S.C. § 1188 and implementing regulations at 20 C.F.R. § 655.100 et seq.

80.    Defendant Mario Huerta transported the Hernandez Perez brothers, together with other H-2A guest workers at Huerta Farms, to work at the Catalano Farm on at least eight occasions in June and/or July 2017.

81.    The Hernandez Perez brothers performed agricultural worked at Catalano Farms on at least eight separate days in June and/or July 2017.

82.    The agricultural work that the Hernandez Perez brothers performed at Catalano Farms consisted of picking vegetables, specifically pumpkins and peppers.

83.     Defendant Michael Catalano was present at Catalano Farms when the Hernandez Perez brothers performed agricultural work at Catalano Farms.

84.     Upon information and belief, Defendants Catalano Farms and Michael Catalano provided the Hernandez Perez brothers with the tools and equipment necessary to perform the agricultural work at Catalano Farms.

85.     Persons at Catalano Farms who, upon information and belief, were employed by Michael Catalano and Catalano Farms, Inc., directly supervised the agricultural work that the Hernandez Perez brothers performed at Catalano Farms.

86.     Persons at Catalano Farms who, upon information and belief, were employed by Michael Catalano and Catalano Farms, Inc., controlled and assigned the specific job duties regarding the agricultural work that the Hernandez Perez brothers performed at Catalano Farms.

87.     Upon information and belief, Defendants Catalano Farms and Michael Catalano controlled and determined the length of time and number of hours that the Hernandez Perez brothers performed agricultural work at Catalano Farms.

88.     The Hernandez Perez brothers were issued payment for the agricultural work they performed at Catalano Farms by Defendants Huerta Farms and Mario Huerta.

89.     Defendants Huerta Farms and Mario Huerta paid the Hernandez Perez brothers only $9.00 per hour rather than the adverse effect wage rate of $12.19 per hour for the agricultural work they performed at Catalano Farms.

90.     Upon information and belief, Defendants Catalano Farms, Inc. and Michael Catalano knew or should have known that Defendants Huerta Farms and Mario Huerta paid the Hernandez Perez brothers less than the adverse effect wage rate of $12.19 per hour the agricultural work they performed.

**(Improper deductions for meals)**

91.    While working at Huerta Farms, the Hernandez Perez brothers lived in a dormitory on the farm with about 20 other H-2A workers.

92.    The dormitory had no kitchen, refrigerator or stove.  Defendants Huerta Farms and Mario Huerta did not provide free kitchen facilities and regular transportation to local grocery stores, as stated in the Huerta Farms H-2A Clearance Order.

93.    Instead, Defendants Huerta Farms and Mario Huerta provided meals prepared by Mario Huerta's wife to the workers, including the Hernandez Perez brothers.

94.    Defendants Huerta Farms and Mario Huerta deducted $110/week from the Hernandez Perez brothers' weekly pay as the cost of those meals.

95.    Defendants Huerta Farms and Mario Huerta  never offered to provide the Hernandez Perez brothers transportation to a grocery store, as provided in the Huerta Farms H-2A Clearance Order.

**(Inability of Hernandez Perez brothers to challenge Defendants Huerta Farms' and Mario Huerta's illegal and abusive actions)**

96.    Because the Hernandez Perez brothers did not have possession of their passports and visas and did not feel free to leave Huerta Farms, they could not cash their paychecks themselves. The Hernandez Perez brothers therefore felt they had no choice but to sign their paychecks over to Defendant Mario Huerta and let him pay them in cash.

97.    Because they could not leave Huerta Farms and because there were no food storage or cooking facilities in their dormitory, they also had no choice but to accept the meals prepared by Defendant Mario Huerta's wife.

98.     The Hernandez Perez brothers were also unable to object to or challenge Defendant Mario Huerta's calculation of their wages, including the reduction in pay from $12.19 to $9.00 per hour, because they were afraid of having their employment terminated and of being left without their passports and visas, of being deprived of the wages they had anticipated earning, and being left without sufficient funds to be able to return to their homes in Mexico and repay the debts they had incurred to travel to the United States .

**E.  Improper termination of employment**

99.     On or about the last week of June or the first week of July 2017, two H-2A guest workers unexpectedly and suddenly left Huerta Farms during the night.

100.     On or about July 15, 2017, Defendant Mario Huerta summoned the Hernandez Perez brothers to speak with them. He appeared angry. He demanded they turn over their cell phone so that he could use the calculator on their phone to clarify an issue regarding their wages. He then told them to leave because they were fired and never returned their phones.

101.     The Hernandez Perez brothers questioned why they were being fired. At various times, Defendant Mario Huerta stated that it was because their work was not satisfactory. Later, he would state that they had "stolen tomatoes."  Eventually, he stated that it was because they had reported him to the Mexican consulate.

102.     None of the reasons stated by Defendant Mario Huerta constituted a basis for termination pursuant to the Clearance Order. The Hernandez Perez brothers had performed their job duties well and had previously been told they were good workers. They had not stolen any produce; one time, about a month prior in June, they asked a supervisory worker if they could give a few bruised and defective tomatoes to their sister and received permission to do so. While the Hernandez Perez brothers had not taken any action to report Defendant Mario Huerta to any

22

government entities, such as the Mexican consulate, such action would not have served as a legitimate basis for terminating their employment.

103.    After telling the Hernandez Perez brothers they were fired, Defendant Mario Huerta angrily demanded that they sign a paper he handed to them.. Defendant Mario Huerta told them repeatedly that they had to sign the paper before he would return their passports and visa documents. He did not translate or explain to them what the paper stated.

104.    The Hernandez Perez brothers signed the paper out of fear, intimidation, and concern that they would not have their essential documents returned. The Hernandez Perez brothers believed that, without their documentation, they would have no way of proving that they were documented, if Defendant Mario Huerta were to call immigration authorities or the local police.

105.    After the Hernandez Perez brothers signed the paper, Defendant Mario Huerta demanded that the Hernandez Perez brothers leave Huerta Farms immediately. The Hernandez Perez brothers asked for the return of their H-2A visas and passports that Defendants had previously confiscated, but Defendant Mario Huerta did not ever return their passports and visas. The Hernandez Perez brothers did not return to the farm out of fear that Defendant Mario Huerta would call immigration authorities or the local police. As a result, they were deprived of all of their personal belongings which were retained by Defendant Mario Huerta.

106.    The Hernandez Perez brothers were forced to obtain replacement birth certificates and passports from the Mexican Consulate, which caused them to incur additional costs.

**FIRST COUNT**

**VIOLATION OF TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT OF 2013, 18 U.S.C. §§ 1589, 1590, 1592 & 1595**

*(Defendants Huerta Farms and Mario Huerta only)*

107. Plaintiffs Hernandez Perez brothers reallege and incorporate by reference the allegations in all previous paragraphs of this Complaint as if fully pleaded herein.

108. This Count sets forth a claim by the Hernandez Perez brothers against Defendants for violations of the forced labor provision of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 ("TVPRA"). The Hernandez Perez brothers are authorized to bring this civil claim against Defendants pursuant to the civil remedies and extraterritorial provisions of the TVPRA. 18 U.S.C. § 1595, 1596.

109. The TVPRA**,** 18 <u>U.S.C.</u> § 1589**,** prohibits "forced labor," defined as labor obtained through (I) force or the threat of force, physical restraint or threats of physical restraint; (2) serious harm or threat of serious harm; (3) abuse or threatened abuse of law or the legal process; or (4) any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint. Defendants recruited and transported the Hernandez Perez brothers into the United States for the purposes of obtaining their labor through abuse or threatened abuse of law or the legal process.

110. From approximately May 29, 2017 through July 15, 2017, Defendants knowingly obtained the labor and/or services of the Hernandez Perez brothers by creating a threat of serious harm and a threat of abuse of law or the legal process;

111. Defendant Mario Huerta confiscated and maintained possession of the Hernandez Perez brothers' visas and passports to keep them from leaving his employ or reporting his labor abuses to the Mexican consulate and/or other governmental agencies.

112.    During their employ, the Hernandez Perez brothers requested the return of their documents at various times. Despite assurances from Defendant Mario Huerta on two occasions that he would return the documents very shortly, Defendant Mario Huerta never returned them. Defendant Mario Huerta did so "to prevent or restrict or to attempt to prevent or restrict, without lawful authority, [the Hernandez Perez brothers'] liberty to move or travel, in order to maintain [their] labor or services," in violation of 18 U.S.C. § 1592.

113.    Defendants Huerta Farms and Mario Huerta violated the TVPRA, 18 U.S.C. §§ 1589, by confiscating the Perez' brothers' passports and visas, creating threat of serious harm; specifically, the threat of arrest, loss of earned wages, and deportation if they left the Huerta Farm premises.

114.    Without their visas and passports, the Hernandez Perez brothers believed they would be unable to prove their legal status and defend themselves, should relations with Defendants deteriorate or should Defendants engage in an abuse of legal process, should as wrongfully reporting them to immigration or the local police as being undocumented, illegal aliens. By confiscating the Hernandez Perez' brothers' passports and visas, Defendants created a threat of an abuse of legal process by making possible their arrest, prosecution as illegal aliens, and deportation if they left the Huerta Farm premises. The threat of abuse of legal process was further solidified when Defendants refused to return the Hernandez Perez brothers' visa and passport upon request. Defendants Huerta Farms' and Mario Huerta's abusive and illegal business practices, including confiscating the Perez' brothers' and other guest workers' passports and visas, created an intimidating and coercive work environment in which the workers were unable to challenge Defendants breaches of the terms of their employment contract. These business practices  constitute a scheme, plan, or pattern intended to cause the workers to believe

that, if the workers did not perform required labor or services, they would suffer serious harm, in violation of 18 U.S.C. §§, 1589, 1590, 1592.

115.    Defendants' actions detailed in this Count were taken knowingly within the meaning of 18 U.S.C. §§ 1589, 1590, 1592.

116.     The Hernandez Perez brothers suffered injuries as a result of these actions.

117.    Based on Defendants' unlawful actions violating TVPRA, Plaintiffs are entitled to an award of compensatory and punitive damages to be determined, damages as a result of pain and suffering, attorneys' fees, and costs, including pre- and post-judgment interest pursuant to 18 U.S.C. § 1595.

## <u>SECOND COUNT</u>

### VIOLATION OF THE NEW JERSEY HUMAN TRAFFICKING PREVENTION, PROTECTION, AND TREATMENT ACT (THE "NJ ACT"), <u>N.J.S.A.</u> 2C:13-8 AND <u>N.J.S.A.</u> 2C:13-8.1

#### *(Defendants Huerta Farms and Mario Huerta only)*

118.    The Hernandez Perez brothers reallege and incorporate by reference the allegations in all previous paragraphs of this Complaint as if fully pleaded here.

119.    Pursuant to the New Jersey Human Trafficking Prevention, Protection, And Treatment Act (the "NJ Trafficking Act"), <u>N.J.S.A.</u> 2C:13-8(1), a person commits the crime of human trafficking if he knowingly holds, recruits, lures, entices, harbors, transports, provides or obtains, by any means, another to provide labor or services by any one of the following:

      a)  by causing or threatening to cause serious bodily harm or physical restraint against the person or any other person;

    b)  by means of any scheme, plan, or pattern intended to cause the person to believe that the person or any other person would suffer serious bodily harm or physical restraint;

    c)  by destroying, concealing, removing, confiscating, or possessing any passport, immigration-related document as defined in section 1 of P.L.1997, c. 1 (C.2C:21-31), or other document issued by a governmental agency to any person which could be used as a means of verifying the person's identity or age or any other personal identifying information;

    d)  by means of the abuse or threatened abuse of the law or legal process;

    e)  by means of fraud, deceit, or misrepresentation against the person

120.    Pursuant to N.J.S.A. 2C:13-8(2), a person is also guilty of trafficking if he receives anything of value from participation as an organizer, supervisor, financier or manager in a scheme or course of conduct that involves any of the above-described actions.

121.    Pursuant to N.J.S.A. 2C:13-9, a person is also guilty of trafficking if he provides services, resources, or assistance with the knowledge that the services, resources, or assistance are intended to be used in furtherance of the commission of the crime of human trafficking in violation of N.J.S.A. 2C:13-8.

122.    Pursuant to N.J.S.A. 2C:13-8.1, any person injured, including injury due to the loss of moneys or property, real or personal, by an actor and all those acting in concert with that actor who committed a human trafficking offense in violation of N.J.S.A. 2C:13-8 or N.J.S.A. 2C:13-9 may bring a civil action in any court of competent jurisdiction against the actor and all those acting in concert with that actor.

123.    Defendants Huerta Farms and Mario Huerta  engaged in human trafficking in violation of <u>N.J.S.A.</u> 2C:13-8(1), as follows:

    a.  Defendants concealed, removed, confiscated, and/or possessed the Hernandez Perez brothers passports, immigration-related documents, and other identification documents;

    b.  Defendants engaged in a threatened abuse of the law or legal process as his confiscation of the Hernandez Perez brothers' documents resulted in them having no proof of legal immigration status and created a threat of arrest and deportation if they left Huerta Farms;

    c.  Defendants engaged in fraud and deceit by misrepresenting to the Hernandez Perez brothers that he would comply with the H-2A program regulations and other applicable law and the terms of the clearance order in employing them.

124.    Defendants Huerta Farms and Mario Huerta also violated <u>N.J.S.A</u>. 2C:13-8(2) as they received financial value from his participation as an organizer, supervisor, financier or manager in a scheme or course of conduct that involved human trafficking in that they benefitted from his recruited workers' labor.

125.    Defendants Huerta Farms and Mario Huerta further violated <u>N.J.S.A.</u> 2C:13-9 by providing services, resources, or assistance in recruiting, hiring, and transporting workers with the knowledge that the services, resources, or assistance are intended to be used in furtherance of the commission of the crime of human trafficking. The Hernandez Perez brothers have been injured, including but not limited to financial loss and deprivation of their personal property, by Defendants Huerta Farms' and Mario Huerta's  illegal actions.

## THIRD COUNT

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### 29 U.S.C. § 201 ET SEQ.

#### *(Defendants Huerta Farms and Mario Huerta only)*

126.    Plaintiffs Hernandez Perez brothers reallege and incorporate by reference the allegations in all previous paragraphs of this Complaint as if fully pleaded here.

127.    Under USDOL regulations at 20 C.F.R. § 655.122(h)(1) & (p)(1) implementing the minimum wage provisions under the Fair Labor Standards Act, 29 U.S.C. § 206(a), to the extent that an H-2A worker's transportation expenses reduce the worker's first week earnings below the Fair Labor Standards Act minimum wage, the employer is obligated to reimburse during the first week of work the portion of these expenses needed to raise the worker's earnings to the minimum wage. See also USDOL guidance at 75 Fed. Reg. 6884, 6915 (Feb. 12, 2010) ("an H-2A employer covered by the FLSA is responsible for paying inbound transportation costs in the first workweek of employment to the extent that shifting such costs to employees (either directly or indirectly) would effectively bring their wages below the FLSA minimum wage.")

128.    In 2017, the federal minimum wage was $7.25 an hour.

129.    The Hernandez Perez brothers each worked 50 hours during their first work week.

130.    Pursuant to the FLSA, the Hernandez Perez brothers were each entitled to no less than the minimum wage for their first week of work of $362.50 ($7.25 x 50 hours).

131.    The Hernandez Perez brothers each incurred $468.00 inbound travel expenses traveling  from Mexico to the United States in order to work at Defendant Huerta Farms in New Jersey.

132.    Defendants Huerta Farms and Mario Huerta paid the Hernandez Perez brothers $450.00 each for their first week wages.

133.    The Hernandez Perez brothers actual earnings for the first week of work, when their inbound travel costs of $468.00 each are deducted, were negative -$18.00 each ($450.00 - $468.00 = -$12.00).

134.    Pursuant to the FLSA, in order to receive the minimum wage for their first week of work after deducting their travel costs, Defendants Huerta Farms and Mario Huerta should have paid the Hernandez Perez brothers each an additional $380.50 ($362.50 + $18.00 = $380.50), for a total of $830.50 each ($450 + 380.50 = $830.50).

135.    Pursuant to the FLSA, the Hernandez Perez brothers are entitled to an additional $380.50 each from Defendants Huerta Farms and Mario Huerta for their first week of pay.

136.    By failing to reimburse each of the Hernandez Perez brothers for their inbound transportation costs during their first work week, Defendants Huerta Farms and Mario Huerta impermissibly shifted such costs to the Hernandez Perez  brothers effectively bringing  their wages below the FLSA minimum wage in violation of the FLSA, 29 U.S.C. § 206(a), and implementing regulations.

137.    As a consequence of Defendants Huerta Farms and Mario  Huerta's violations of the FLSA as set forth herein, pursuant to 29 U.S.C. § 216(b) of the FLSA, Defendants Huerta Farms and Mario Huerta are liable to pay the Hernandez Perez brothers their unpaid minimum wages, plus an additional payment of an amount equal to each of their of their unpaid minimum wages as liquidated damages, as well as payment of reasonable attorney's fees and costs of suit.

**FOURTH COUNT**

**BREACH OF CONTRACT**

30

*(Defendants Huerta Farms and Mario Huerta only)*

138.    Plaintiffs Hernandez Perez brothers reallege and incorporate by reference the allegations in all previous paragraphs of this Complaint as if fully pleaded here.

139.    Defendants Huerta Farms and Mario Huerta  made an offer of employment that the Hernandez Perez brothers accepted and which was made for mutual consideration and with specific and certain terms.

140.    The employment agreement incorporated and included the statements and assurances contained in the Huerta Farms H-2A Clearance Order and the requirements of the H-2A program.

141.    The Hernandez Perez brothers fully performed their obligations under the employment contract.

142.    Defendants Huerta Farms and Mario Huerta  committed multiple breaches of the terms of employment contract with the Hernandez Perez brothers, including but not limited to the following:

      a.   Charging a $2,000 "fee" as a condition of employment;

      b.   Reducing their hourly wage from the adverse effect wage rate of  $12.19/hr. to only $9.00/hr.;

      c.   Failing to reimburse them for travel costs;

      d.   Confiscating their passports and visas and thereby severely restricting their freedom of movement;

      e.   Failing to provide free kitchen facilities and, instead, requiring them to purchase meals from Defendants;

    f.   Failing to keep accurate and adequate records with respect to the workers' earnings;

    g.   Failing to provide the workers with accurate hours and earnings statements;

    h.   Requiring them to sign over their paychecks to Defendants and paying them a reduced amount in cash, thereby falsifying the employment records;

    i.   Failing to provide them with the agreed-upon number of hours of work per week;

    j.   Requiring them to work at other farms not specified in the clearance order;

    k.   Terminating the employment contract without good cause and not based on serious acts of misconduct.

143.    Defendants  Huerta Farms and Mario Huerta  further breached the terms of the employment contract by failing to comply with the provisions of applicable federal regulations under 20 CFR § 655.122 and 20 CFR § 655.135, as follows:

    a.   Defendants did not provide the "minimum benefits, wages, and working conditions that must be offered in order to avoid adversely affecting U.S. workers pursuant to 20 C.F.R. §§ 655.122, 655.135;

    b.   Defendants violated 20 C.F.R. § 655.122(l), by failing to pay adverse effect wage rate of $12.19 per hour.

    c.   Defendants violated 20 C.F.R. §655.122(g) by making misrepresentations in the Huerta Farms Clearance Order concerning arrangements for meals;

    d.   In addition to violating the regulations by falsely stating that he will not charge workers or make any deduction for meals, Defendants' charges for meals exceeded the maximum allowable charge pursuant to 20 C.F.R. §655.173;

e.   Defendants violated 8 C.F.R. § 214.2(h)(1)(i) by having the workers work on a farm not listed on the Huerta Farms Clearance Order;

f.   Defendants violated 20 C.F.R. § 655.135(e) by confiscating the workers' immigration documents;

g.   Defendants violated 20 C.F.R. § 655.135((j) by charging  a $2,000 recruitment fee;

h.   Defendants violated 20 C.F.R. § 655.122(j), by failing to keep accurate and adequate records with respect to the workers' earnings;

i.   Defendants violated 20 C.F.R. § 655.122(k), by failing to provide H-2A workers with accurate hours and earnings statements;

j.   Defendants violated 20 C.F.R. § 655.135((h) by confronting the Hernandez Perez brothers about purported complaints made to the Mexican Embassy and using that as basis for firing them;

k.   Defendants violated 20 C.F.R. § 655.122 by terminating the Hernandez Perez brothers without cause;

l.   Defendants violated 20 C.F.R. §655.122(i) by failing to provide employment and wages for at least 3/4 of the workdays of the total contract period set out in the job offer/clearance order.

144.   The Hernandez Perez brothers incurred damages as a result of Defendants' breach of their employment contract, including but not limited to the following:

a.   Funds paid toward unlawful $2,000 recruitment fee;

b.   Lost wages due to reduction in hourly pay;

c.   Lost wages due to reduction in hours of work;

d.   Lost wages due to early termination of employment;

e.   Costs of meals they were required to purchase from Defendants;

f.   Transportation costs;

g.   Lodging expenses;

h.   Cost of obtaining new birth certificate

i.   Cost of obtaining new passport.

## FIFTH COUNT

### BREACH OF CONTRACT

### *(All Defendants)*

145.   Plaintiffs Hernandez Perez brothers reallege and incorporate by reference the allegations in all previous paragraphs of this Complaint as if fully pleaded here.

146.   Defendants Huerta Farms and Catalano Farms, Inc. were joint employers of the Hernandez Perez Brothers with regard to the agricultural work that the Hernandez Perez brothers performed at Catalano Farms.

147.   Defendants Huerta Farms and Catalano Farms, Inc. paid the Hernandez Perez brothers less than adverse effect wage rate required by H-2A regulations for the agricultural work that the Hernandez Perez brothers performed at Catalano Farms.

148.   Defendants Huerta Farms, Mario Huerta and Catalano Farms, Inc. paid the Hernandez Perez brothers only $9.00 per hour rather than $12.19 per hour required by their employment contract for the agricultural work that the Hernandez Perez brothers performed at Catalano Farms.

149.   Defendant Michael Catalano knew or should have known that the Hernandez Perez brothers were paid only $9.00 per hour rather than $12.19 per hour in violation of the

adverse effect wage rate required by H-2A regulations and contrary their employment contract for the agricultural work that the Hernandez Perez brothers performed at Catalano Farms.

150.    Defendants Huerta Farms, Mario Huerta, Catalano Farms, Inc. and Michael Catalano violated H-2A regulations and breached their employment contract with  the Hernandez Perez brothers by paying them less than $12.19 per hour for the agricultural work that the Hernandez Perez brothers performed at Catalano Farms.

151.    The Hernandez Perez brothers incurred damages as a result of Defendants' breach of their employment contract for lost wages due to the reduction in their hourly pay for the agricultural work that the Hernandez Perez brothers performed at Catalano Farms.

## SIXTH COUNT

### FRAUD

### *(Defendants Huerta Farms and Mario Huerta only)*

152.    Plaintiffs Hernandez Perez brothers reallege and incorporate by reference the allegations in all previous paragraphs of this Complaint as if fully pleaded here.

153.    Defendants Huerta Farms and Mario Huerta made numerous material misrepresentations in the offer of employment to the Hernandez Perez brothers as stated in the Huerta Farms H-2A Clearance Order, including but not limited to Defendants' assurance that Defendants would comply with the H-2A program regulations, the amount of hourly wage that the Hernandez Perez brothers would be paid, that there would not be deductions from their pay for meals, and that they could be terminated only for serious acts of misconduct.

154.    Defendants Huerta Farms and Mario Huerta made these misrepresentations with knowledge of their falsity.

155.    Defendants Huerta Farms and Mario Huerta made these representations with an intention that the Hernandez Perez brothers would rely on them and accept the employment offer.

156.    The Hernandez Perez brothers reasonably relied on the representations stated in the Huerta Farms H-2A Clearance Order.

157.    Defendants Huerta Farms' and Mario Huerta's actions constitute fraud.

158.    The Hernandez Perez brothers incurred damages as a result of Defendants' misrepresentations, including deprivation of wages owed to them and compensation for their related expenses.

## SEVENTH COUNT

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### *(Defendants Huerta Farms and Mario Huerta only)*

159.    Plaintiffs Hernandez Perez brothers reallege and incorporate by reference the allegations in all previous paragraphs of this Complaint as if fully pleaded here.

160.    Defendants Huerta Farms and Mario Huerta, by confiscating the Hernandez Perez brothers' passports and visas and thereby preventing them from having freedom to leave Huerta Farms, creating a coercive and intimidating atmosphere, taking advantage of their vulnerability and the parties' unequal bargaining positions, and violating the terms of their agreement and the requirements of the H-2A program, acted in bad faith with the purpose of depriving the Hernandez Perez brothers of their rights and benefits under their employment contracts and the law governing H-2A guest workers.

161.    These actions by Defendants Huerta Farms and Mario Huerta were in breach of the implied covenant of good faith and fair dealing.

36

162.    Defendants' conduct caused the Hernandez Perez brothers to suffer injury, damage, loss, and/or harm, including but not limited to unreimbursed costs, unjustified fees and charges, and lost wages.

## EIGHTH COUNT

### VIOLATION OF NEW JERSEY WAGE PAYMENT ACT, N.J.S.A. 34:11-4.1 ET SEQ.

### *(All Defendants)*

163.    The New Jersey Wage Payment Act, N.J.S.A. 34:11-4.1 et seq., (NJWPA), is applicable to "Employers, " defined as  "any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased individual, or the receiver, trustee, or successor of any of the same, employing any person in this State' and "Employees," defined as "any person suffered or permitted to work by an employer, except that independent contractors and subcontractors shall not be considered employees."

164.    Defendants Huerta Farms,  Mario Huerta, Catalano Farms, Inc. and Michael Catalano were "employers" of the Hernandez Perez brothers and the Hernandez Perez brothers were "employees" within the meaning of the NJWPA.

165.    The NJWPA, N.J.S.A. 34:11-4.2, requires that "[c]xcept as otherwise provided by law, every employer shall pay *the full amount of wages due* to his employees at least twice during each calendar month…" (emphasis added)

166.    The NJWPA, N.J.S.A. 34:11-4.4, prohibits an employer from withholding or diverting any portion of an employee's wages except under specific enumerated circumstances.

167.    The NJWPA, N.J.S.A. 34:11-4.6,  provides that every employer shall notify his employees at the time of hiring, of the rate of pay, and of the regular payday designated by the

employer and also notify his employees of any changes in the pay rates or pay days *prior to the time of such changes*.

168.    The NJWPA, <u>N.J.S.A.</u> 34:11-4.7, renders it "unlawful for any employer to enter into or make any agreement with any employee for the payment of wages of any such employee otherwise than as provided in this act, except to pay wages at shorter intervals than as herein provided, or to pay wages in advance." The Act further provides that every agreement made in violation of this section "shall be deemed to be null and void," and that "each and every employee with whom any agreement in violation of this section shall be made by any such employer, or the agent or agents thereof, shall have a right of civil action against any such employer for the full amount of his wages in any court of competent jurisdiction in this State."

169.    Defendants Huerta Farms, Mario Huerta, Catalano Farms, Inc. and Michael Catalano violated the NJWPA, <u>N.J.S.A.</u> 34:11-4.1 <u>et seq.</u>, as follows:

   a.   Defendants paid the Hernandez Perez brothers less than the agreed-upon wage of $12.10 per hour—which was the adverse effect wage rate required under H-2A regulations and their employment contract—in violation of <u>N.J.S.A</u>. 34:11-4.2;

   b.   Defendants Huerta Farms and Mario Huerta made withheld  and diverted a portion of the Hernandez Perez brothers' wages toward payment of an improper "hiring fee" and for meals, which deductions are not authorized pursuant to <u>N.J.S.A.</u> 34:11-4.4;

   c.   Defendants failed to notify the Hernandez Perez brothers of changes in their pay rates or pay days prior to the time of such changes, in violation of <u>N.J.S.A.</u> 34:11-4.6

170.     Defendants are liable for the full amount of wages owed to the Hernandez Perez brothers in accordance with N.J.S.A. 34:11-4.7.

## NINTH COUNT

### CONVERSION

*(Defendants Huerta Farms and Mario Huerta only)*

171.     Plaintiffs Hernandez Perez brothers reallege and incorporate by reference the allegations in all previous paragraphs of this Complaint as if fully pleaded here.

172.     Defendant Mario Huerta's demand that the Hernandez Perez brothers turn over their passports, H-2A visas, and birth certificates to him constituted an unauthorized assumption and exercise of the right of ownership over personal property, goods or chattels belonging to another.

173.     Defendant Mario Huerta's refusal to return to the Hernandez Perez brothers their documents and their personal possessions, even upon their termination of employment and expulsion from Huerta Farms, was to the exclusion of their rights as owners.

174.     Defendant Mario Huerta's actions constitute conversion.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Marco Antonio Hernandez Perez and Juan Guillermo Hernandez Perez respectfully request that this Court grant the following relief:

**(A) Under First Count (TVPRA):**

1.  Declaring that Defendants Huerta Farms and Mario Huerta have violated the Trafficking Victims Protection Reauthorization Act of 2013 ("TVPRA"), 18 U.S.C. §§ 1589, 1590, 1592, as set forth in the First Count above; and

2.   Granting judgment pursuant to 18 U.S.C. § 1595(a) of the TVPRA against Defendants Huerta Farms and Mario Huerta and in favor of each Plaintiff for compensatory damages, consequential damages, punitive damages, damages for pain and suffering and emotional harm, and awarding attorneys fees and costs.

**(B) Under Second Count (NJ-HTPPTA):**

1.   Declaring that Defendants Huerta Farms and Mario Huerta have violated the New Jersey Human Trafficking Prevention, Protection, And Treatment Act, N.J.S.A. 2C:13-8, as set forth in the Second Count above; and

2.   Granting judgment pursuant to N.J.S.A. 2C:13-8.1 against Defendants Huerta Farms and Mario Huerta and in favor of each Plaintiff for compensatory damages, consequential damages, punitive damages, damages for pain and suffering and emotional harm, and awarding attorneys fees and costs.

**(C) Under Third Count (FLSA):**

1.   Declaring that Defendants Huerta Farms and Mario Huerta have violated the Fair Labor Standards Act, 29 U.S.C. § 206(a), as set forth in the Third Count above; and

2.   Granting judgment pursuant to 29 U.S.C. § 216(b) of the FLSA against Defendants Huerta Farms and Mario Huerta and in favor of each Plaintiff  in the amount of their respective unpaid wages, plus an equal amount in liquidated damages, and awarding attorneys fees and costs.

**(D) Under Fourth Count (Breach of Contract):**

1.   Declaring that Defendants Huerta Farms and Mario Huerta have breached their employment contract with the Plaintiffs as set forth in the Fourth Count above; and

40

2.   Granting judgment against Defendants Huerta Farms and Mario Huerta and in favor of each Plaintiff for compensatory and consequential damages.

**(E) Under Fifth Count (Breach of Contract):**

1.   Declaring that Defendants Huerta Farms, Mario Huerta, Catalano Farms, Inc. and Michael Catalano  have breached their employment contract with the Plaintiffs as set forth in the Fifth Count above; and

2.   Granting judgment against Defendants Huerta Farms, Mario Huerta, Catalano Farms, Inc. and Michael Catalano and in favor of each Plaintiff for compensatory and consequential damages.

**(F) Under Sixth Count (Fraud):**

1.   Declaring that Defendants Huerta Farms and Mario Huerta have committed fraud in connection with their employment contract with the Plaintiffs as set forth in the Sixth Count above; and

2.   Granting judgment against Defendants Huerta Farms and Mario Huerta and in favor of each Plaintiff for compensatory, consequential damages and punitive damages.

**(G) Under Seventh Count (Breach Covenant Good Faith and Fair Dealing):**

1.   Declaring that Defendants Huerta Farms and Mario Huerta have breached the implied covenant of good faith and fair dealing in connection with their employment contract with the Plaintiffs as set forth in the Seventh Count above; and

2.   Granting judgment against Defendants Huerta Farms and Mario Huerta and in favor of each Plaintiff for compensatory, consequential damages and punitive damages.

**(H) Under Eighth Count (NJWPA):**

1.   Declaring that Defendants Huerta Farms, Mario Huerta, Catalano Farms, Inc. and Michael Catalano have breached New Jersey Wage Payment Act, N.J.S.A. 34:11-4.1 et seq., as set forth in the Eighth Count above;

2.   Granting judgment pursuant to N.J.S.A. 34:11-4.7 against Defendants Huerta Farms, Mario Huerta, Catalano Farms, Inc. and Michael Catalano and in favor of each Plaintiff for compensatory damages in the amount of full wages owed.

**(I) Under Ninth Count (Conversion):**

1.   Declaring that Defendants Huerta Farms and Mario Huerta have committed conversion with respect to Plaintiffs'' personal property; and

2.   Granting judgment Defendants Huerta Farms Mario Huerta, and in favor of each Plaintiff for compensatory damages, consequential damages and punitive damages.

**(J) Other Relief:**

1.   Granting Plaintiffs pre- and post-judgment interest as allowed by law; and

2.   Granting Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

Dated:  November 17, 2018          SOUTH JERSEY LEGAL SERVICES, INC.
*Attorneys for Plaintiffs Marco Antonio Hernandez Perez*
*and Juan Guillermo Hernandez Perez*

By: _/s/ Kenneth M. Goldman_____.
     KENNETH M. GOLDMAN, ESQUIRE

By: _/s/ Jennifer R. Pérez_____.
     JENNIFER R. PÉREZ, ESQUIRE

By: _/s/ Olga D. Pomar_____.
     OLGA D. POMAR, ESQUIRE

## <u>L.Civ.R. 11.2 CERTIFICATION</u>

Pursuant to L.Civ.R. 11.2, I certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 17, 2018.

Dated:  November 17, 2018       SOUTH JERSEY LEGAL SERVICES, INC.
*Attorneys for Plaintiffs Marco Antonio Hernandez Perez and Juan Guillermo Hernandez Perez*

By: /s/ *Kenneth M. Goldman* .
   KENNETH M. GOLDMAN, ESQUIRE

By: /s/ *Jennifer R. Pérez* .
   JENNIFER R. PÉREZ, ESQUIRE

By: /s/ *Olga D. Pomar* .
   OLGA D. POMAR, ESQUIRE